# DISTRICT COURT OF THE VIRGIN ISLANDS

## DIVISION OF ST. CROIX

| | |
|---|---|
| LUNA MUSIC, LLC d/b/a AQUA SOUNDS STUDIO, INC., <br><br> Plaintiff, <br><br> v. <br><br> EXECUTIVE INSURANCE SERVICES, INC. and CERTAIN UNDERWRITERS AT LLOYD's, LONDON, <br><br> Defendants. <br> _____ | 1:20-cv-00002 |

TO: Lee J. Rohn, Esq.
     Douglas L. Capdeville, Esq.
     Paul R. Neil, Esq.

## MEMORANDUM OPINION AND ORDER

THIS MATTER is before the Court on Defendants Certain Underwriters at Lloyd's, London Subscribing to Policy No. EX08-PR15-76's ("Defendants")[1] Motion to Compel Arbitration and Stay Proceedings Pending Arbitration (ECF No. 3). Plaintiff filed a response (ECF No. 10), and Defendants replied (ECF No. 11).

### I.    BACKGROUND

This case is the latest in a long line of lawsuits concerning insurance coverage for damaged property in the Virgin Islands in the wake of Hurricane Maria. Defendants subscribed to insurance policy number EX08-PR16-76 (the "Policy"), effective December 5,

---

[1] Although "Defendants" are not the only defendants in this case, the Court will refer to them as such for purpose of this Memorandum Opinion And Order.

2016 through December 5, 2017, issued to Plaintiff providing certain coverage for property at #22 and #23 Prince Street, Christiansted, St. Croix, Virgin Islands 00822 (the "Property"). (ECF No. 3-1). Hurricane Maria allegedly damaged Plaintiff's Property, and Plaintiff made a claim for damage under the Policy. Plaintiff advised that it intended to submit its own repair estimate but was nonresponsive after Defendants made repeated, documented requests for this estimate. Defendants then invoked the Policy's arbitration clause, which provides:

> If the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.
>
> The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and charges of the umpire.

(ECF No. 3-1 at 11). Defendants then invoked arbitration in a letter to Plaintiff's public adjuster on September 6, 2019 and appointed an arbitrator. (ECF No. 3-2). Plaintiff did not respond to the letter or any of the follow-up letters Defendants sent. Instead, Plaintiff filed suit two weeks later on September 20, 2019 against Defendants and agent, Executive Insurances Services, Inc. in the Superior Court of the Virgin Islands. (ECF No. 1-1). On January 10, 2020, the case was removed to this Court. (ECF No. 1). Defendants submit this motion seeking a court order compelling arbitration. (ECF No. 3).

## II.     APPLICABLE LEGAL PRINCIPLES

In most cases, the enforceability of an arbitration clause is governed primarily by Chapter I of the Federal Arbitration Act. *See* 9 U.S.C. §§ 1-16. However, in 1970, the U.S. acceded to the Convention on the Recognition of Foreign Arbitral Awards. Convention Done at New York June 10, 1958, T.I.A.S. No. 6997, 21 U.S.T. 2517, 1970 WL 104417, at *5 (Dec. 29, 1970). Article II, Section 3 the Convention provides that "[t]he court of a Contracting State … shall, at the request of one of the parties, refer the parties to arbitration…." *Id.* at *1. Contemporaneous to the U.S.'s accession, the FAA was amended so that Chapter II now implements the Convention in disputes involving foreign parties or related to a foreign state. 9 U.S.C. §§ 210, 202.

Although the FAA would normally preempt a conflicting state law under the Supremacy Clause, the McCarran-Ferguson Act of 1945 creates a system of "reverse-preemption" for insurance law. *See United States Dep't of Treasury v. Fabe*, 508 U.S. 491, 501 (1993). Under McCarran-Ferguson, "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance … unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). More specifically, "state laws reverse preempt federal laws if (1) the state statute was enacted for the purpose of regulating the business of insurance, (2) the federal statute does not specifically relate to the business of insurance, and (3) the federal statute would

invalidate, impair, or supersede the state statute." *Suter v. Munich Reins. Co.*, 223 F.3d 150, 160 (3d Cir. 2000) (internal citations omitted).

### III.     DISCUSSION

#### A. Jurisdictional Concerns Regarding the Arbitration Clause

Plaintiff argues that, because Section 820 relates specifically to insurance, the McCarran-Ferguson Act permits that statute to preempt the FAA and the Convention. Specifically, Plaintiff claims that "[a]n order compelling arbitration would [im]permissibly deprive 'the courts of this territory of the jurisdiction of an action against the insurer' in violation of Section 820" and that "the arbitration provision here is not enforceable because it violates clear statutory law, preserved by the McCarran-Ferguson Act of 1945, that prevents an insurance policy from depriving a territorial court of jurisdiction." (ECF No. 10 at 4). Effectively, Plaintiff argues that the arbitration clause is a jurisdiction-stripping provision and that submitting this case to arbitration would prevent the Virgin Islands courts of hearing an insurance lawsuit, in violation of Section 820.

Section 820(a)(2) provides that "[n]o insurance contract delivered or issued for delivery in this territory and covering subjects located, resident, or to be performed in this territory, shall contain any condition, stipulation or agreement which … deprives the courts of this territory of the jurisdiction of the action against the insurer." The statute simply does not apply to the arbitration clause in this case. Defendants do not seek to deprive this Court of its jurisdiction to hear the case; rather, they merely seek to invoke the arbitration process

as set forth in the Policy. The arbitration clause provides the parties an opportunity to avoid the costs of litigation and encourage settlement, and declining to go forward with a contractually mandated arbitration process would significantly undermine this purpose. *See* 46A C.J.S. Insurance § 1889 (2015) ("The purpose of a provision for arbitration in an insurance policy is to provide a plain, speedy, inexpensive and just determination of the extent of the loss."). Of course, in the event that the dispute is not resolved through arbitration, this Court will retain jurisdiction over all remaining issues. *See Parkcrest Builders, LLC v. Hous. Auth. of New Orleans*, No. 15-150, 2019 WL 2210746, at *3 (E.D. La. May 21, 2019) ("When a case is stayed pending arbitration, a district court retains jurisdiction over the case."); s*ee also Hatter v. Guardian Ins. Co.,* No. 1:18-CV-00041, 2019 WL 3892415, at *2 (D.V.I. Aug. 19, 2019) (explaining that "[i]t seem[ed] prudent to let the [appraisal] process play out before the Court [took] action.").[2]

---

[2] Last year, in *Vento v. Certain Underwriters at Lloyds*, No. CV 2018-91, 2019 WL 2402973, at *2 (D.V.I. Apr. 26, 2019), the plaintiffs argued that a standard-form appraisal clause "interfere[d] with their 'right of action' and impermissibly 'deprived the courts of this territory of the jurisdiction of action against the insurer," under § 820(a)(2)." U.S. Magistrate Judge Ruth Miller rejected their arguments, explaining that:

> Subsection "G" stipulates merely that the Ventos must meet certain conditions before filing suit, and subsection "I" identifies the conditions under which Lloyds will make a loss payment to the insured. Neither subsection addresses Virgin Islands courts' jurisdiction, which the parties expressly accepted, or bars the filing of a lawsuit. Thus, the Court finds that the Virgin Islands Code in no way precludes this Court's enforcement of the policy's appraisal provision.

*Id.* at *4. Although an arbitration clause triggers slightly different obligations than does an appraisal clause, the Court finds Judge Miller's analysis persuasive and applicable to this context.

### B. Preemption of the Convention

Even if Section 820 could be interpreted in a way that precluded arbitration, the Convention would not be preempted by it under the McCarran-Ferguson Act. Some context is important here. In 1944, the Supreme Court in *United States v. South-Eastern Underwriters Assn.*, 322 U.S. 533, held that insurance was subject to federal regulation under the interstate commerce clause. "Prior to that decision, it had been assumed … that the issuance of an insurance policy was not a transaction in interstate commerce and that States enjoyed a virtually exclusive domain over the insurance industry." *St. Paul Fire & Marine Ins. Co. v. Barry*, 438 U.S. 531, 538-39 (1978). Consequently, "the decision provoked widespread concern that the States would no longer be able to engage in taxation and effective regulation of the insurance industry. Congress moved quickly, enacting the McCarran-Ferguson Act within a year of *South-Eastern Underwriters*." *Id.* at 539. McCarran-Ferguson provided that an "Act of Congress" shall not be construed to invalidate any state insurance regulation, unless the act specifically related to insurance. McCarran-Ferguson Act, 15 U.S.C. § 1012. In other words, the Act sought to eliminate any risk that unrelated federal statutes would effectively nullify state insurance regulations. Because McCarran-Ferguson allows state laws to supersede some federal laws, it is commonly said to permit "reverse preemption." Even so, since McCarran-Ferguson became law, the Supreme Court has emphasized that it was meant to supersede domestic laws only. *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S 614, 629 (1985). It is not at all clear, however, that McCarran-Ferguson was meant

to have any effect on an international treaty that the United States acceded to thirty years later.

Here, Article II, Section 3 of the Convention commands that "[t]he court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, *shall*, at the request of one of the parties, refer the parties to arbitration." 1970 WL 104417, at *1 (emphasis added). "[A] treaty is 'equivalent to an act of the legislature,' and hence self-executing, when it "operates of itself without the aid of any legislative provision." *Medellin v. Texas,* 552 U.S. 491, 505 (2008) (quoting *Foster v. Neilson,* 27 U.S. (2 Pet.) 253, 314 (1829)). "Self-executing treaties are those that immediately create rights and duties of private individuals which are enforceable and are to be enforced by domestic tribunals." *Flores v. S. Peru Copper Corp.,* 414 F.3d 233, 257 n.34 (2d Cir. 2003) (internal quotation marks, alterations, and citations omitted). By contrast, "non-self-executing treaties require implementing action by the political branches of government or are otherwise unsuitable for judicial application." *Id.* (internal quotation marks, alterations, and citations omitted.) "An international agreement of the United States is 'non-self-executing' (a) if the agreement manifests an intention that it shall not become effective as domestic law without the enactment of implementing legislation, (b) if the Senate in giving consent to a treaty, or Congress by resolution, requires implementing legislation, or (c) if implementing legislation is constitutionally required." Restatement (Third) Of Foreign Relations Law § 111(4) (1987).

Although the Third Circuit has not specifically addressed whether Article II, Section 3 of the Convention is subject to preemption, the Court finds that use of the word "shall" is indicative of a self-executing treaty provision. Other courts have arrived at the same conclusion. For example, in *Martin v. Certain Underwriters at Lloyd's, London*, No. SACV 10-1298, 2011 WL 13227729, at *6 (C.D. Cal. Sept. 2, 2011), the court explained that:

> The plain language of Section 3 supports the conclusion that it is self-executing. *See Medellin*, 522 U.S. at 506 (stating that the interpretation of a treaty begins with its text). Unlike the disputed terms in *Medellin* (such as, "undertakes to comply") which defined what, if any, domestic legal effect a treaty ratified by the Senate created, the use of the verb "shall" here expressly directs courts to enforce arbitration agreements. *Medellin,* 552 U.S. at 508, 509 n.5 (distinguishing between treaty language that constitutes only a commitment to future action, such as "undertakes to comply," and treaty language using "shall" or "must.") The word "shall" does not leave discretion to the legislative or judicial branches to determine the degree of enforcement. *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 735 (5th Cir. 2009) (en banc) (Clement, J., concurring). Referral to arbitration is mandatory under Section 3. *Id.* The Court is persuaded by Judge Clement's statement that "[t]reaty provisions setting forth international obligations in such mandatory terms tilt strongly toward self-execution." *Id.*
>
> Based on the language of Section 3 and looking to applicable case law for guidance, the Court concludes that Section 3 is self-executing and has automatic domestic legal effect. No implementing legislation, such that might be construed as an "Act of Congress" in the McCarran–Ferguson context, was necessary to give Section 3 domestic legal effect.

*See also ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 387 (4th Cir. 2012) (observing that the word "shall" in Section 3 is "indicative of a self-executing treaty provision"); *CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Georgia, LLC*, No. 3:19-CV-05785-RBL, 2019 WL 7185547, at *5 (W.D. Wash. Dec. 26, 2019) (adopting reasoning from *Martin* and explaining

that "Section 3 contains exactly the type of 'directive to domestic courts' that was missing in *Medellin*, making it self-executing.").

The significance of this determination that Section 3 is self-executing is that at least this provision of the Convention is not an "Act of Congress" that is subject to preemption under McCarran-Ferguson. The Convention thus controls, and even with Plaintiff's suggested reading of Section 820, the arbitration clause is not barred by Virgin Islands law.

### C. Approval by the Virgin Islands Commissioner of Insurance

Plaintiff also contends that the arbitration clause violates V.I. Code Ann., tit. 22, § 810 ("Section 810"), because it "was not approved by the Commissioner of Insurance." (ECF No. 10 at 4). Section 810 provides, in pertinent part, that:

> (a) No insurance policy form other than surety bond forms, or application form where written application is required and is to be attached to the policy, or printed life or disability rider or endorsement form shall be issued, delivered, or used unless it has been filed with and approved by the Commissioner. This section shall not apply to policies, riders or endorsements of unique character designed for and used with relation to insurance upon a particular subject.
>
> (b) Every such filing shall be made not less than 30 days in advance of any such issuance, delivery, or use. At the *expiration of such 30 days* the form so filed *shall be deemed approved* unless prior thereto it has been affirmatively approved or disapproved by order of the Commissioner. The Commissioner may extend by not more than an additional 30 days the period within which he may so affirmatively approve or disapprove any such form, by giving notice of such extension before expiration of the initial 30-day period. At the expiration of any such period as so extended, and in the absence of such prior affirmative approval or disapproval, any such form shall be deemed approved. The Commissioner may withdraw any

> such approval at any time for cause. By approval of any such form for immediate use, the Commissioner may waive any unexpired portion of such initial 30-day waiting period.

V.I. Code Ann., tit. 22, § 810 (a)-(b) (emphasis added). Plaintiff seems to ignore the provisions of Section 810(b), which governs the approval by operation of law of insurance policies submitted to the Commissioner. Here, Defendants submitted policy form LMA3022—the same form used by the Policy, including the arbitration provision—with the Virgin Islands Insurance Commissioner on December 28, 2005. (ECF No. 11-2). The Commissioner never "affirmatively approved or disapproved" form LMA3022, and, after January 27, 2006, it was tacitly approved by operation of law. As such, form LMA3022 became valid for use in the Virgin Islands, even though it was not explicitly approved by the Commissioner.

Plaintiff also makes issue of form LMA5020, which was submitted for approval by the Commissioner and denied on August 17, 2007. (ECF No. 1-2 at 11). LMA5020 contained a clause stating:

> This Service of Suit clause will not be read to conflict with or override the obligations of the parties to arbitrate their disputes as provided for in the Arbitration provision within this Policy. This clause is intended as an aid to compelling arbitration or enforcing such arbitration or arbitral award, not as an alternative to such Arbitration provision for resolving disputes arising out of this Insurance.

*Id.* However, despite its alleged non-approval, Plaintiff overstates the significance of this particular clause, which would merely supplement the arbitration clause but otherwise not affect the arbitration clause's viability. The Third Circuit has explained that "service-of-suit

clauses do not negate accompanying arbitration clauses; indeed, they may complement arbitration clauses by establishing a judicial forum in which a party may enforce arbitration." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 554 (3d Cir. 2009). Here, even if not operative, the absence of the service-of-suit clause would not in any way disrupt the enforceability of the arbitration clause. In any event, LMA5020 became operative by operation of law, because after the Commissioner denied it in 2007, Defendants resubmitted it on September 27, 2007, and it was not disapproved within 30 days. (ECF No. 11-2 at 4).

## IV. CONCLUSION

For the foregoing reasons, it is **ORDERED:**

1. Defendants' Motion to Compel Arbitration and Stay Proceedings Pending Arbitration (ECF No. 3) is **GRANTED**.

2. The case is **STAYED** pending completion of arbitration.

3. The parties should report the results of the arbitration to the Court and provide a status report to the Court no later than August 20, 2020.

ENTER:

Dated: February 20, 2020          /s/ George W. Cannon, Jr.
                                  GEORGE W. CANNON, JR.
                                  MAGISTRATE JUDGE