## DISTRICT COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

LUNA MUSIC, LLC d/b/a AQUA SOUNDS
STUDIO, INC.,

        Plaintiff,

        v.

EXECUTIVE INSURANCE SERVICES,
INC. and CERTAIN UNDERWRITERS AT
LLOYD'S OF LONDON,

        Defendants.

Civil Action No. 2020-0002

**Attorneys:**
**Lee J. Rohn, Esq.,**
St. Croix, U.S.V.I.
     *For Plaintiff*

**Douglas L. Capdeville, Esq.,**
St. Croix, U.S.V.I.
     *For Defendant Executive Insurance Services, Inc.*

**Gaylin Vogel, Esq.,**
**Kevin F. D'Amour, Esq.,**
St. Thomas, U.S.V.I.
**Gregory Lee Mast, Esq.,**
Atlanta, GA
     *For Defendant Certain Underwriters at Lloyd's of London*

## MEMORANDUM OPINION

**Lewis, District Judge**

THIS MATTER comes before the Court on the "Emergency Motion to Remand" ("Motion to Remand") (Dkt. No. 7) filed by Plaintiff Luna Music, LLC d/b/a/ Aqua Sounds Studio, Inc. ("Plaintiff"); Defendant Certain Underwriters at Lloyd's of London's ("Defendant Underwriters") Opposition thereto (Dkt. No. 12); and Plaintiff's Reply (Dkt. No. 15). Additionally, before the

Court is Plaintiff's Objection and Appeal (Dkt. No. 16) of Magistrate Judge George W. Cannon, Jr.'s Memorandum Opinion and Order (Dkt. No. 14) granting Defendant Underwriters' "Motion to Compel Arbitration and Stay Proceedings Pending Arbitration" ("Motion to Compel Arbitration") (Dkt. No. 3); Defendant Underwriters' Response to Plaintiff's Objection and Appeal (Dkt. No. 19); and Plaintiff's Reply (Dkt. No. 20). Finally, before the Court is Defendant Underwriters' "Motion to Dismiss Plaintiff's Complaint or, in the Alternative, Motion for More Definite Statement" ("Motion to Dismiss") (Dkt. No. 2). For the reasons discussed below, the Court will deny Plaintiff's Motion to Remand, affirm the Magistrate Judge's Opinion and Order granting Defendant Underwriters' Motion to Compel Arbitration, and deny as moot Defendant Underwriters' Motion to Dismiss.

## I.      BACKGROUND

Plaintiff filed its Complaint in the Superior Court of the Virgin Islands on September 20, 2019. (Dkt. No. 1-1). The Complaint alleges that in 2008, Plaintiff went to Defendant Executive Insurance Services, Inc. ("Defendant Executive")—which was acting as Defendant Underwriters' agent—to insure its business located at 22/23 Prince Street on St. Croix. *Id.* at ¶¶ 18-19. Plaintiff alleges that thereafter, Defendant Underwriters provided Plaintiff with business insurance coverage. *Id.* at ¶¶ 20-21. After Hurricane Maria caused damage in September 2017, Plaintiff alleges that Defendants committed misconduct with regard to Plaintiff's rights under the insurance policy, including hiring improper and incompetent adjusters, misinterpreting the insurance policy in order to withhold payment, devaluing Plaintiff's claim, failing to pay Plaintiff in accordance with the insurance policy, and misrepresenting the nature and extent of the insurance coverage. *Id.* at ¶¶ 27-52.

Defendant Underwriters removed the case to this Court on January 10, 2020, pursuant to 9 U.S.C. §§ 203 and 205. (Dkt. No. 1 at 1). Defendant Underwriters states that the action "is removable to this Court under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards . . . , implemented by the United States Congress through 9 U.S.C. §§ 201–208 of the Federal Arbitration Act." *Id.* at 3. Plaintiff then filed the instant Motion to Remand. (Dkt. No. 7). While Plaintiff's Motion to Remand was pending, Magistrate Judge Cannon granted Defendant Underwriters' Motion to Compel Arbitration and stayed the case pending the completion of arbitration. (Dkt. No. 14). Plaintiff objected to and appealed the Magistrate Judge's decision. (Dkt. No. 16).

## II.     MOTION TO REMAND

### A.  Applicable Legal Principles

#### 1.   The Federal Arbitration Act and the Convention on the Recognition and Enforcement of Foreign Arbitral Awards

The Federal Arbitration Act ("FAA") "creates a body of federal substantive law establishing and governing the duty to honor agreements to arbitrate disputes." *Century Indem. Co. v. Certain Underwriters at Lloyd's, subscribing to Retrocessional Agreement Nos. 950548, 950549, and 950646*, 584 F.3d 513, 522 (3d Cir. 2009). The FAA was designed to counteract "the traditional judicial hostility" toward enforcing arbitration agreements and paved the way toward today's "strong federal policy in favor of arbitration." *In re Pharmacy Ben. Managers Antitrust Litig.*, 700 F.3d 109, 116 (3d Cir. 2012) (quoting *Alexander v. Anthony Intern., L.P.*, 341 F.3d 256, 263 (3d Cir. 2003)) (internal quotation marks omitted). Where a party petitions to enforce an arbitration agreement, "[t]he court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the

agreement." *Sandvik AB v. Advent Int'l Corp.*, 220 F.3d 99, 104 (3d Cir. 2000) (quoting 9 U.S.C. § 4) (internal quotation marks omitted).

"An arbitration provision in an international commercial agreement is governed by the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards." *Std. Bent Glass Corp. v. Glassrobots Oy*, 333 F.3d 440, 448-49 (3d Cir. 2003). In 1970, the United States acceded to the Convention on the Recognition and Enforcement of Foreign Arbitral Awards, June 10, 1958, 21 U.S.T. 2517, 330 U.N.T.S. 38 ("the Convention").[1] *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 520 n.15 (1974). Thereafter, "Congress passed Chapter 2 of the United States Arbitration Act, 9 U.S.C. [§] 201 et seq., in order to implement the Convention." *Id. See also Ario v. Underwriting Members of Syndicate 53 at Lloyds for 1998 Year of Acct.*, 618 F.3d 277, 288 (3d Cir. 2010), *as amended*, (Dec. 7, 2010) (stating that Chapter 1 of the FAA, 9 U.S.C. §§ 1–16, is the "domestic FAA" and Chapter 2, 9 U.S.C. §§ 201–208, is "the Convention's implementing legislation").[2] "[T]he principal purpose for acceding to the Convention was to 'encourage the recognition and enforcement of commercial arbitration agreements in international contracts and to unify the standards by which agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries.'" *Admart AG v. Stephen & Mary Birch Found., Inc.*, 457 F.3d 302, 307 (3d Cir. 2006), *as amended on reh'g*, (Sept. 28, 2006) (quoting *Scherk*, 417 U.S. at 520

---

[1] The Convention is often referred to as the New York Convention. *See Invista S.à.r.l. v. Rhodia, S.A.*, 625 F.3d 75, 84 (3d Cir. 2010).

[2] As emphasized by the Third Circuit:

> [T]he Convention and Chapter 2 of the FAA are distinct. The Convention is the multilateral treaty to which the United States acceded. Chapter 2 of the FAA is the implementing legislation for the Convention, and it provides the mechanism for enforcement of the Convention in United States courts.

*Ario*, 618 F.3d at 286 n.7 (citing 9 U.S.C. § 201).

n.15); *accord Suter v. Munich Reinsurance Co.*, 223 F.3d 150, 155 (3d Cir. 2000). "The domestic FAA applies to actions brought under the [Convention] to the extent that the two are not in conflict." *Century Indem. Co.*, 584 F.3d at 523 (citing 9 U.S.C. § 208 and *China Minmetals Materials Imp. & Exp. Co., Ltd v. Chi Mei Corp.*, 334 F.3d 274, 280 (3d Cir. 2003)).

> With regard to removal, 9 U.S.C. § 205 provides in pertinent part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. . . .

*See also GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637, 1642 (2020) (9 U.S.C. § 205 "authorizes the removal of an action from state to federal court if the action 'relates to an arbitration agreement . . . falling under the Convention [on the Recognition and Enforcement of Foreign Arbitral Awards].'").[3]

### 2. The McCarran-Ferguson Act

The McCarran-Ferguson Act of 1945, 15 U.S.C. §§ 1011–1015, "was enacted in response to [the Supreme Court's] decision in *United States v. South-Eastern Underwriters Assn.,* 322 U.S. 533, 64 S. Ct. 1162, 88 L.Ed. 1440 (1944)" where the Court held that "an insurance company that conducted a substantial part of its business across state lines was engaged in interstate commerce

---

[3] Additionally, 9 U.S.C. § 203 states:

> An action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States. The district courts of the United States (including the courts enumerated in section 460 of title 28) shall have original jurisdiction over such an action or proceeding, regardless of the amount in controversy.

*See also Century Indem. Co.*, 584 F.3d at 523 ("Actions under the New York Convention are deemed to arise under the laws and treaties of the United States. 9 U.S.C. § 203. The FAA empowers district courts to compel arbitration in accordance with agreements, 9 U.S.C. § 206, and to enforce awards, 9 U.S.C. § 207, falling within the New York Convention.").

and thereby was subject to the antitrust laws." *U.S. Dep't of Treasury v. Fabe*, 508 U.S. 491, 499 (1993). The McCarran-Ferguson Act was intended to "restore the supremacy of the States in the realm of insurance regulation." *Id.* at 500; *see also Group Life & Health Ins. Co. v. Royal Drug Co.*, 440 U.S. 205, 218 n.18 (1979) ("[T]he *primary* purpose of the McCarran-Ferguson Act was to preserve state regulation of the activities of insurance companies, as it existed before the *South-Eastern Underwriters* case. The power of the States to regulate and tax insurance companies was threatened after that case, because of its holding that insurance companies are in interstate commerce. The McCarran-Ferguson Act operates to assure that the States are free to regulate insurance companies without fear of Commerce Clause attack.").

With those issues in mind, in enacting the McCarran-Ferguson Act, Congress "declare[d] that the continued regulation and taxation by the several States of the business of insurance is in the public interest, and that silence on the part of the Congress shall not be construed to impose any barrier to the regulation or taxation of such business by the several States." 15 U.S.C. § 1011. Further, 15 U.S.C. § 1012(b) provides in pertinent part that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance, or which imposes a fee or tax upon such business, unless such Act specifically relates to the business of insurance." Thus, the Act creates a system of "reverse preemption":

> Ordinarily, a federal law supersedes any inconsistent state law. The first clause of [15 U.S.C. § 1012(b)] . . . reverses this by imposing what is, in effect, a clear-statement rule, a rule that state laws enacted "for the purpose of regulating the business of insurance" do not yield to conflicting federal statutes unless a federal statute specifically requires otherwise.

*Fabe*, 508 U.S. at 507. "Under § 1012, state laws reverse preempt federal laws if (1) the state statute was enacted 'for the purpose of regulating the business of insurance,' (2) the federal statute

does not 'specifically relate to the business of insurance,' and (3) the federal statute would 'invalidate, impair, or supersede' the state statute." *Suter*, 223 F.3d at 160.

**B. Analysis**

    **1. Background**

This case was removed to the District Court pursuant to 9 U.S.C. §§ 203 and 205. (Dkt. No. 1 at 1). Defendant Underwriters argues that the action arises out of the alleged breach of an insurance policy ("the Policy") which contains an arbitration clause governed by the Convention, and thus removal was proper pursuant to 9 U.S.C. § 205. *Id.* at 2-4. This removal statute permits removal when "the instant matter '*relates to*' an arbitration agreement *falling under the Convention*." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, Civil Action No. 05-CV-6004, 2006 WL 6667385, at *2 (E.D. Pa. May 18, 2006) (emphasis added), *aff'd sub nom. Century Indem. Co. v. Certain Underwriters at Lloyd's, London, subscribing to Retrocessional Agreement Nos. 950548, 950549, 950646*, 584 F.3d 513 (3d Cir. 2009); *see also Beiser v. Weyler*, 284 F.3d 665, 671 n.7 (5th Cir. 2002) ("Under the plain language of the statute . . . the plaintiff's case must relate to an agreement 'falling under the Convention' in order for the district court to have jurisdiction."); *Silec Cable S.A.S. v. Alcoa Fjardaal, SF*, Civil No. 12-01392, 2012 WL 5906535, at *7 (W.D. Pa. Nov. 26, 2012) ("[T]he plain language of section 205 . . . affords defendants the ability to remove a case that 'relates to an arbitration agreement or award under the Convention.'").

Plaintiff argues, on the other hand, that the case was improperly removed, stating that "[t]he purported arbitration clause contained in the Plaintiff's insurance Policy is unenforceable because it expressly violates V.I. law and cannot be used to assert arbitral jurisdiction in this Court." (Dkt. No. 7 at 2). Plaintiff relies on 22 V.I.C. § 820 as its basis for arguing that the arbitration clause at

issue is invalid. *Id.* at 2-5. Additionally, Plaintiff argues that the insurance clause is invalid because it was not approved by the Commissioner of Insurance pursuant to 22 V.I.C. § 810. *Id.* at 5-8.

Title 22 V.I.C. § 820 provides in pertinent part:

(a) No insurance contract delivered or issued for delivery in this territory and covering subjects located, resident, or to be performed in this territory, shall contain any condition, stipulation, or agreement which—

(1) requires it to be construed according to the laws of any other territory, state or country except as necessary to meet the requirements of the motor vehicle financial responsibility laws of such other territory, state or country;

(2) deprives the courts of this territory of the jurisdiction of action against the insurer; . . .

(b) Any such condition, stipulation, or agreement in violation of this section shall be void, but such voiding shall not affect the validity of the other provisions of the contract.

Plaintiff argues that an arbitration clause is a forum selection clause and its enforcement would impermissibly deprive the territorial courts of jurisdiction in violation of 22 V.I.C. § 820. (Dkt. No. 7 at 3-4). Plaintiff further argues that the power of territorial legislation in the area of insurance is preserved by the McCarran-Ferguson Act. *Id.* at 2-3.

Unlike most forms of federal question jurisdiction which prohibit removal based on a federal defense, Section 205 permits such a removal—specifically a removal based on an arbitration agreement under the Convention. *See* 9 U.S.C. § 205 ("The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section need not appear on the face of the complaint but may be shown in the petition for removal."); *Beiser*, 284 F.3d at 671-72 ("As a result, absent the rare frivolous petition for removal, as long as the defendant claims in its petition that an arbitration clause provides a defense, the district court will have jurisdiction to decide the merits of that claim."); *Infuturia Glob. Ltd. v. Sequus Pharms., Inc.*, 631 F.3d 1133, 1138 (9th Cir. 2011) (Section 205 "invites removal of cases

whose relation to an agreement or award under the Convention is based on an affirmative defense by expressly abrogating the 'well-pleaded complaint' rule."); *Silec Cable S.A.S.*, 2012 WL 5906535, at *7 ("[T]he plain language of section 205 . . . expressly obviates the requirement in a typical removal case that subject matter jurisdiction be determined from the face of the well-pleaded complaint, without reference to the defenses raised."). When examining removal under Section 205, the Court looks to the notice of removal to determine whether removal is proper. *See Beiser*, 284 F.3d at 671 ("[J]ust as we determine whether a plaintiff's claim arises under federal law from the complaint alone, the statute directs us to determine whether a defendant's defense arises under federal law from the 'petition for removal' alone."). Thus, whether a case has been properly removed is a separate question from the merits of whether arbitration can be compelled. *See id.* at 671-72 (instructing district courts to "keep[] the jurisdictional and merits inquiries separate"); *Century Indem. Co.*, 2006 WL 6667385, at *2 (following *Beiser* and stating that "[t]he Court must accept jurisdiction before it can determine whether an arbitration agreement existed"); *Silec Cable S.A.S.*, 2012 WL 5906535, at *9 ("[S]uch a determination of whether the case is arbitrable or not is beyond the scope of the Court's limited inquiry to decide if subject matter jurisdiction has been established under section 205."). As courts have noted:

> Under § 205, however, the federal issue in cases will often be resolved early enough to permit remand to the state court for a decision on the merits. The arbitrability of a dispute will ordinarily be the first issue the district court decides after removal under § 205. If the district court decides that the arbitration clause does not provide a defense, and no other grounds for federal jurisdiction exist, the court must ordinarily remand the case back to state court.

*Beiser*, 284 F.3d at 674-75; *see also Century Indem. Co.*, 2006 WL 6667385, at *2 (finding the reasoning in *Beiser* persuasive).

Plaintiff's arguments regarding the validity of the arbitration agreement pursuant to Virgin Islands law and the McCarran-Ferguson Act go to the merits of whether arbitration can and should

be compelled, rather than whether Defendant Underwriters properly removed the action pursuant to the limited inquiry the Court must conduct under Section 205. *See Beiser*, 284 F.3d at 670 (finding that even where the plaintiff was arguing that he was not a signatory to the arbitration agreement, the action still related to an arbitration agreement under the Convention and removal was proper under Section 205); *Century Indem. Co.*, 2006 WL 6667385, at *1-2 (denying motion to remand where the plaintiff argued no arbitration agreement existed between the parties); *see also Miller v. Tri Marine Fish Co.*, No. LA CV16-02203 JAK (SSx), 2016 U.S. Dist. LEXIS 83936, at *14 (C.D. Cal. June 28, 2016) ("Section 205 does not include any requirement that, as a prerequisite for removal, the removing party establish that the arbitration agreement is valid and enforceable."). Thus, the Court will first address whether the removal was proper under the requirements of 9 U.S.C. § 205, and then turn to Plaintiff's arguments regarding the validity of the arbitration clause when addressing Defendant Underwriters' Motion to Compel Arbitration.

### 2. The Propriety of Removal

Defendant Underwriters attached the Policy to its Notice of Removal. (Dkt. No. 1-2). The Policy reflects the Certificate Number EX08-PR16-76 and was issued to Plaintiff as the insured for the locations of #22 & 23 Prince Street, Christiansted, St. Croix, VI, effective from December 5, 2016 to December 5, 2017. *Id.* at 6. A section of the Policy—labelled as form LMA 3022— contains an arbitration provision which states:

> If the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy, each party shall, within ten (10) days after the demand in writing by either party, appoint a competent and disinterested arbitrator and the two chosen shall before commencing the arbitration select a competent and disinterested umpire. The arbitrators together shall determine such matters in which the Insured and the Underwriters shall so fail to agree and shall make an award thereon, and if they fail to agree, they will submit their differences to the umpire and the award in writing of any two, duly verified, shall determine the same.

The Parties to such arbitration shall pay the arbitrators respectively appointed by them and bear equally the expenses of the arbitration and the charges of the umpire.

*Id.* at 24.

While Plaintiff does not dispute that the Convention applies to the arbitration agreement or that this action relates to the Convention, the Court must satisfy itself that subject matter jurisdiction has been established, and therefore must address whether Defendant Underwriters has met the requirements for removal under Section 205—specifically, whether the action *relates to* an arbitration agreement *falling under the Convention*.

The subject matter of an action "relates to" an arbitration agreement under the Convention when the arbitration agreement "could *conceivably* affect the outcome of the plaintiff's case." *Beiser*, 284 F.3d at 669; *accord Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 844 (8th Cir. 2012); *Infuturia Glob. Ltd.*, 631 F.3d at 1138; *Outokumpu Stainless USA, LLC v. Converteam SAS*, 902 F.3d 1316, 1323 (11th Cir. 2018), *rev'd and remanded on other grounds sub nom. GE Energy Power Conversion France SAS, Corp. v. Outokumpu Stainless USA, LLC*, 140 S. Ct. 1637 (2020); *Silec Cable S.A.S.*, 2012 WL 5906535, at *7; *Century Indem. Co.*, 2006 WL 6667385, at *2. "[T]his 'easy' removal standard differs from the general rule of strict construction of statutes conferring removal jurisdiction." *Amato v. KPMG LLP*, 433 F. Supp. 2d 460, 477 (M.D. Pa. 2006), *vacated in part on reconsideration on other grounds*, No. 06CV39, 2006 WL 2376245 (M.D. Pa. Aug. 14, 2006).

Defendant Underwriters in its Notice of Removal argues that the "relates to" requirement has been met because "[t]he arbitration agreement covers disputes between the Parties regarding 'any aspect of this Policy'" and "[t]he Superior Court Action is predicated on Underwriters' duties and obligations under the Policy and their alleged breaches thereof." (Dkt. No. 1 at 7). The Court agrees. The Complaint alleges that Defendant Underwriters issued Plaintiff insurance to protect its

business located at 22/23 Prince Street and breached its obligations under said insurance contract. (Dkt. No. 1-1). The arbitration clause at issue provides that the parties shall arbitrate "[i]f the Insured and the Underwriters fail to agree in whole or in part regarding any aspect of this Policy." (Dkt. No. 1-2 at 24). Thus, the Court finds that the arbitration clause could conceivably affect the outcome of the action. *See Silec Cable S.A.S.*, 2012 WL 5906535, at *9 ("[Defendant's] arbitration defense set forth in its Notice of Removal is sufficient to demonstrate that it 'relates to' an arbitration agreement under the Convention. The arbitration provision in the Purchase Order plainly sets forth that *any* dispute between the two international entities should proceed to arbitration under the ICC and in accordance with ICC Rules.").

As to whether an agreement "falls under" the Convention, the Third Circuit instructs courts to look at four factors: (1) is there an agreement in writing to arbitrate the subject of the dispute?; (2) Does the agreement provide for arbitration in the territory of a signatory of the Convention?; (3) Does the agreement arise out of a legal relationship, whether contractual or not, which is considered as commercial?; (4) Is a party to the agreement not an American citizen, or does the commercial relationship have some reasonable relation with one or more foreign states? *Std. Bent Glass Corp.*, 333 F.3d at 449 & n.13; *Century Indem. Co.*, 584 F.3d at 523 n.8 (citing *Std. Bent Glass Corp.*); *Ario*, 618 F.3d at 286 (same).

As to the first factor, Defendant Underwriters has attached to its Notice of Removal what it represents as the Policy between Plaintiff and Defendant Underwriters regarding Plaintiff's insurance coverage, which includes a written agreement to arbitrate. *See Std. Bent Glass Corp.*, 333 F.3d at 449 ("The term 'agreement in writing' shall include an arbitral clause in a contract or

an arbitration agreement, signed by the parties or contained in an exchange of letters or telegrams." (quoting the Convention at Article II, Section 2) (internal quotation marks omitted)).[4]

As to the second factor, Defendant Underwriters states that "while the Policy's arbitration provision does not specify a location for the arbitration, under the FAA's default provisions, the arbitration would occur in the Virgin Islands." (Dkt. No. 1 at 5). The Policy states that the law of the Virgin Islands governs. (Dkt. No. 1-2 at 5, 16). Additionally, the Policy contains a Service of Suit clause to aid in "compelling arbitration or enforcing such arbitration or arbitration award" which provides that actions will be submitted to "the jurisdiction of a Court of competent jurisdiction *within the United States*." (Dkt. No. 1-2 at 24 (emphasis added)). Similar language has been found to be sufficient to meet the second factor. *See VVG Real Estate Invs. v. Underwriters at Lloyd's, London*, 317 F. Supp. 3d 1199, 1205 (S.D. Fla. 2018) ("The arbitration clause here fails to provide any language indicating where arbitration should take place. However, . . . the Policy states that '[n]o one may bring a legal action against the Underwriters under this Policy unless . . . the action is brought in the United States of America, in a court having proper jurisdiction . . . ,'

---

[4] The Court notes that Plaintiff mentions in passing in a brief footnote that the Policy relied on by Defendants "does not bear [Plaintiff's] signature." (Dkt. No. 7 at 2 n.1). Plaintiff states further that "because removal is blatantly improper on other grounds, Plaintiff will not address that issue here." *Id.* Plaintiff's decision to "not address that issue here" constitutes a waiver of any arguments related thereto. *See Gallagher v. Allegheny County*, Civil Action No. 09-103, 2011 U.S. Dist. LEXIS 7047, at *7 (W.D. Pa. Jan. 25, 2011) ("A litigant who fails to press a point by supporting it with pertinent authority or by showing why it is a good point despite a lack of authority forfeits that point." (quoting *Grossman v. Jimenez*, Civ. No. 91-0423, 1992 U.S. Dist. LEXIS 22766, at *5 (M.D. Pa. April 17, 1992)) (internal quotation marks omitted)); *Heyman v. Citimortgage, Inc.*, Civ. No. 14-1680-KM-MAH, 2019 U.S. Dist. LEXIS 128238, at *48 n.28 (D.N.J. June 27, 2019) ("Typically, 'arguments raised in passing (such as, in a footnote), but not squarely argued, are considered waived.'" (quoting *John Wyeth & Brother Ltd. v. Cigna Int'l Corp.*, 119 F.3d 1070, 1076 n.6 (3d Cir. 1997))). In any event, Plaintiff does not dispute that it actually signed the Policy, that the Policy applies to the instant dispute, or that it agreed to the Policy containing the arbitration clause. Thus, the Court declines to take Plaintiff's brief reference to a lack of signature on Defendant's Exhibit as an argument that the Policy was one to which Plaintiff did not agree.

Thus, this language, coupled with the arbitration clause, is sufficient to meet the second . . . factor."); *German Int'l Sch. of Fort Lauderdale, LLC v. Certain Underwriters at Lloyd's, London*, No. 19-60741-Civ-Scola, 2019 U.S. Dist. LEXIS 80705, at *5-6 (S.D. Fla. May 13, 2019) (same). Thus, the second factor has been met.

As to the third factor, the relationship between the parties arises out of an insurance contract, which courts have deemed to be commercial in nature. *See German Int'l Sch. of Fort Lauderdale, LLC*, 2019 U.S. Dist. LEXIS 80705, at *6 ("The relationship between the Plaintiff and the Defendant arises out of an insurance contract in which the Defendant will insure the property owned by the Plaintiff in the event of certain losses. This is a commercial relationship between the insurer and insured."); *Certain Underwriters at Lloyd's, London v. Simon*, No. 1:07-CV-0899-LJM-WTL, 2007 WL 3047128, at *5 (S.D. Ind. Oct. 18, 2007) ("[T]his Court finds that the agreement arises out of a commercial relationship, specifically, the Policy governs the provision of health care insurance for Simon.").

As to the fourth factor, Defendant Underwriters is not a United States citizen. (Dkt. No. 1 at 6; Dkt. No. 1-1 at 4-5; *see also Century Indem. Co*., 584 F.3d at 520 n.5 ("[T]he retrocessional agreements' arbitration clauses fall within the Convention because the retrocessional agreements formed a commercial relationship between Century and Lloyd's and Lloyd's is not a U.S. citizen.")).

In view of the foregoing, the Court finds that Defendant Underwriters has satisfied the four factors necessary to conclude that the arbitration agreement "falls under" the Convention. This finding together with the Court's earlier finding establishes that Defendant Underwriters has met its burden under Section 205 to show that this action relates to an arbitration agreement under the Convention. Accordingly, the Court finds that removal of this action was proper.

### III.     MAGISTRATE JUDGE'S OPINION COMPELLING ARBITRATION

Defendant Underwriters moved to compel arbitration and stay the proceedings pending arbitration based on the arbitration clause of the insurance contract between Defendant Underwriters and Plaintiff. (Dkt. No. 3). Plaintiff opposed the Motion to Compel Arbitration again arguing that Virgin Islands insurance law renders the arbitration clause invalid and unenforceable pursuant to the McCarran-Ferguson Act. (Dkt. No. 10 at 2-4). Additionally, Plaintiff again argued that the arbitration clause was likewise invalid and unenforceable because it was not approved by the Commissioner of Insurance pursuant to 22 V.I.C. § 810. *Id.* at 4-6.

Magistrate Judge Cannon granted Defendant Underwriters' Motion to Compel Arbitration. (Dkt. No. 14). First, the Magistrate Judge concluded that the arbitration clause at issue does not violate 22 V.I.C. § 820 because compelling arbitration does not deprive courts of the Virgin Islands of jurisdiction to hear the case, but simply "provides the parties an opportunity to avoid the costs of litigation and encourage settlement" and "in the event that the dispute is not resolved through arbitration, this Court will retain jurisdiction over all remaining issues." *Id.* at 4-5. Second, the Magistrate Judge concluded that even if an arbitration clause stripped courts of the Virgin Islands of jurisdiction, the Convention is not preempted by territorial law under the McCarran-Ferguson Act. *Id.* at 6-9. Finally, the Magistrate Judge found that the Policy at issue was approved by operation of law pursuant to 22 V.I.C. § 810(b) despite not being explicitly approved by the Virgin Islands Commissioner of Insurance. *Id.* at 9-11.

### A.  Applicable Legal Principles

#### 1.  Standard of Review

Because a decision to compel arbitration and stay litigation pending its resolution has been recognized as a non-dispositive matter in the Third Circuit, the Court reviews the Magistrate

Judge's determination under a "clearly erroneous or contrary to law" standard. *See* 28 U.S.C. § 636(b)(1)(A) ("A judge of the court may reconsider any [non-dispositive] pretrial matter . . . where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law"); Fed. R. Civ. P. 72(a) (providing that a district judge "must consider timely objections and modify or set aside any part of [an] order [on a non-dispositive matter] that is clearly erroneous or is contrary to law"); *see also Virgin Islands Water & Power Auth. v. Gen. Elec. Int'l Inc.*, 561 F. App'x 131, 134 (3d Cir. 2014) ("A ruling on a motion to compel arbitration does not dispose of the case, or any claim or defense found therein. Instead, orders granting this type of motion merely suspend the litigation while orders denying it continue the underlying litigation." (citing *PowerShare, Inc. v. Syntel, Inc.*, 597 F.3d 10, 14 (1st Cir. 2010))).

A factual finding "is clearly erroneous 'when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Lo Bosco v. Kure Eng'g Ltd.*, 891 F. Supp. 1035, 1037 (D.N.J. 1995) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395 (1948)); *Sunshine Shopping Ctr., Inc. v. LG Elecs. Panama, S.A.*, Civil Action No. 2015-0041, 2018 WL 4558982, at *3 (D.V.I. Sept. 21, 2018). "In reviewing a magistrate judge's factual determinations [on a non-dispositive matter], a district court may not consider any evidence which was not presented to the magistrate judge." *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 177 F.R.D. 205, 213 (D.N.J. 1997) (citing *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 92 (3d Cir. 1992)).

On the other hand, district courts conduct a *de novo* review of a magistrate judge's legal conclusions on non-dispositive matters. *Equal Employment Opportunity Comm'n v. City of Long Branch*, 866 F.3d 93, 99 (3d Cir. 2017) (for a non-dispositive motion referred to a magistrate judge, district courts "review findings of fact for clear error and [] review matters of law *de novo*"). "A

16

ruling is contrary to law if the magistrate judge has misinterpreted or misapplied applicable law." *Kounelis v. Sherrer*, 529 F. Supp. 2d 503, 518 (D.N.J. 2008) (citing *Gunter v. Ridgewood Energy Corp.*, 32 F. Supp. 2d 162, 164 (D.N.J. 1998)).

## 2.  Compelling Arbitration

The Convention "commits the courts of signatory states to refer parties to arbitration when the parties have agreed to arbitrate disputes." *Sandvik AB*, 220 F.3d at 104-05; *accord Sunshine Shopping Ctr., Inc.*, 2018 WL 4558982, at *3. Article II of the Convention states, in pertinent part, that:

> 1. Each Contracting State shall recognize an agreement in writing under which the parties undertake to submit to arbitration all or any differences which have arisen or which may arise between them in respect of a defined legal relationship, whether contractual or not, concerning a subject matter capable of settlement by arbitration.
> . . . .
> 3. The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, shall, at the request of one of the parties, refer the parties to arbitration, unless it finds that the said agreement is null and void, inoperative or incapable of being performed.

Further, pursuant to the Convention Act, "[a] court having jurisdiction under this chapter may direct that arbitration be held in accordance with the agreement at any place therein provided for." 9 U.S.C. § 206. The Convention "reinforces a strong federal policy in favor of arbitration over litigation [which] 'applies with special force in the field of international commerce.'" *Std. Bent Glass Corp.*, 333 F.3d at 450 (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985)); *Suter*, 223 F.3d at 155 ("[C]oncerns of international comity, respect for the capacities of foreign and transnational tribunals, and sensitivity to the need of the international commercial system for predictability in the resolution of disputes require that we enforce the parties' agreement [to arbitrate under the Convention] even assuming that a contrary result would be forthcoming in a domestic context." (quoting *Mitsubishi Motors Corp.*, 473 U.S. at 629)).

However, "[t]he strong federal policy favoring arbitration . . . does not lead automatically to the submission of a dispute to arbitration upon the demand of a party to the dispute." *Century Indem. Co.*, 584 F.3d at 523. Rather, before granting a motion to compel arbitration, a district court "must determine that (1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Id. See also Flexi-Van Leasing, Inc. v. Through Transp. Mut. Ins. Ass'n*, 108 F. App'x 35, 38 (3d Cir. 2004) ("Before it compels an unwilling party to arbitrate, however, the court must engage in a limited review, to ensure that a valid agreement to arbitrate exists between the parties and the specific dispute falls within the substantive scope of that agreement. In conducting this review, the court operates under a federal policy that favors arbitration, especially with respect to international commercial agreements." (internal citations omitted)).

The Third Circuit has provided specific guidance with regard to "the standard for district courts to apply when determining whether, in a specific case, an agreement to arbitrate was actually reached." *Guidotti v. Legal Helpers Debt Resolution, L.L.C.*, 716 F.3d 764, 771 (3d Cir. 2013). The standard varies depending on the circumstances presented. The first scenario arises "when it is apparent, based on 'the face of a complaint, and documents relied upon in the complaint,' that certain of a party's claims 'are subject to an enforceable arbitration clause.'" *Id.* at 776 (quoting *Somerset Consulting, LLC v. United Capital Lenders, LLC*, 832 F. Supp. 2d 474, 482 (E.D. Pa. 2011)). In these cases, the motion to compel arbitration should be considered under a motion to dismiss standard pursuant to Federal Rule of Civil Procedure 12(b)(6), and no further discovery should be permitted. *Id.* The second scenario arises where either "the complaint and its supporting documents are unclear regarding the agreement to arbitrate, or if the plaintiff has responded to a motion to compel arbitration with additional facts sufficient to place the agreement to arbitrate in

issue." *Id.* Under these circumstances, "the parties should be entitled to discovery on the question of arbitrability," after which the district court "may entertain a renewed motion to compel arbitration, this time judging the motion under a summary judgment standard" pursuant to Federal Rule of Civil Procedure 56. *Id.* (quoting *Somerset*, 832 F. Supp. 2d. at 482) (internal quotation marks omitted). Where a genuine dispute of material fact regarding the formation of an arbitration agreement remains following this limited discovery, a "court may then proceed summarily to a trial regarding the making of the arbitration agreement or the failure, neglect, or refusal to perform the same, as Section 4 of the FAA envisions." *Id.* (quoting *Somerset*, 832 F. Supp. 2d at 482) (internal quotation marks omitted).

## B. Analysis

### 1. Jurisdictional Issue

Plaintiff first objects on the grounds that Magistrate Judge Cannon ruled on the Motion to Compel Arbitration before the Court had ruled on the Motion to Remand. (Dkt. No. 16 at 3-5). Plaintiff argues that "this Court must rule in the first instance on the Motion to Remand and determine whether it has subject matter jurisdiction" and "[o]nly if the Court were to deny the Motion to Remand, should it then take up the Motion to Compel and rule on it applying a *de novo* review standard." *Id.* at 8.

The Court agrees that when an issue regarding this Court's subject matter jurisdiction arises, "'it is incumbent upon the court[] to resolve such doubts, one way or the other, before proceeding to a disposition on the merits.'" *Zambelli Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 418 (3d Cir. 2010) (quoting *Carlsberg Res. Corp. v. Cambria Sav. & Loan Ass'n*, 554 F.2d 1254, 1256 (3d Cir. 1977)). However, as noted above, the Court has now found that the requirements for removal were met and it therefore has subject matter jurisdiction over this matter.

In response to Plaintiff's timely objections to Magistrate Judge Cannon's ruling on the Motion to Compel Arbitration, the Court will apply a *de novo* review to the legal issues presented. *See Equal Employment Opportunity Comm'n*, 866 F.3d at 99. In view of the Court's determination that this matter is properly before the Court and the fact that the legal issues presented by the Motion to Compel Arbitration will be reviewed *de novo*, the objection regarding the need to first resolve the jurisdictional issue raised by the Motion to Remand is rendered moot.[5]

### 2. Compelling Arbitration

In assessing whether to compel arbitration pursuant to the Convention, the Court must address the same four factors that apply in determining whether an agreement to arbitrate falls under the Convention: "[w]here a dispute arises from an international commercial agreement, a court must address four factors to determine whether the arbitration agreement falls under [the Convention]. If the answers are all in the affirmative, the court must order arbitration unless it determines the agreement is null and void." *Std. Bent Glass Corp.*, 333 F.3d at 449 (citing *Ledee v. Ceramiche Ragno*, 684 F.2d 184, 186-87 (1st Cir. 1982)); *accord Bautista v. Star Cruises*, 396 F.3d 1289, 1294 & n.7 (11th Cir. 2005); *see also Razo v. Nordic Empress Shipping, Ltd.*, Civil Action No. 07-cv-05745 (SDW), 2008 U.S. Dist. LEXIS 57618, at *14-15 (D.N.J. July 24, 2008) ("The arbitration agreement in Plaintiff's Contract falls under the Convention as each of the four elements is satisfied, and this Court is required by the Convention to compel arbitration."). As

---

[5] The Court notes that if the Motion to Remand had been decided prior to the Motion to Compel Arbitration, the same standard of review of "clearly erroneous or contrary to law" would have applied to Plaintiff's appeal of the Magistrate Judge's ruling on the Motion to Compel Arbitration. Accordingly, to the extent that Plaintiff suggests that it is entitled to a *de novo* review of the factual issues due to the procedural posture of this motion, Plaintiff is mistaken. In any event, it is worth noting that the Court is not relying on any of Magistrate Judge Cannon's factual findings that Plaintiff disputes. While the Plaintiff objects to several of the factual statements made by Magistrate Judge Cannon (Dkt. No. 16 at 17-18), the Court finds, as discussed herein, that its resolution of the legal issues render those objections moot.

discussed above in connection with Plaintiff's Motion to Remand, the Court has determined—and the Plaintiff does not dispute—that all four factors necessary to conclude that the arbitration agreement falls under the Convention are satisfied. Thus, in the absence of a valid defense, this matter must be referred to arbitration.[6]

### i. The McCarran-Ferguson Act and 22 V.I.C. § 820

While Plaintiff does not deny that it agreed to arbitrate disputes arising under its insurance policy, Plaintiff argues that the arbitration clause is invalid under 22 V.I.C. § 820. In this regard, Plaintiff contends that Magistrate Judge Cannon's ruling that the arbitration clause is not reverse preempted by 22 V.I.C. § 820 is contrary to law under the McCarran-Ferguson Act, and further, that the arbitration clause violates 22 V.I.C. § 820 by depriving Virgin Islands courts of jurisdiction. (Dkt. No. 16 at 8-17).

Courts in the Virgin Islands have interpreted 22 V.I.C. § 820 as prohibiting the use of forum selection clauses or choice-of-law provisions in insurance contracts that specify a forum outside of the Virgin Islands, or that require the application of law other than the law of the Virgin Islands. *See Diamondrock Hosp. Co. v. Certain Underwriters at Lloyd's of London Subscribing to Pol'y Numbers PRPNA1700847 & PRPNA1702387*, No. ST-18-CV-399, 2019 WL 2156404, at *4 (V.I. Super. Ct. March 5, 2019) ("Under Title 22 V.I.C. § 820(a), forum selection clauses are not enforced when the subject matter of an insurance policy is in the Virgin Islands."); *Bluewater Constr., Inc. v. CBI Acquisitions, LLC*, 70 V.I. 586, 606-07 (V.I. Super. Ct. 2019) ("[T]he Virgin Islands Legislature declared it to be [a] matter of public policy that disputes centering on insurance

---

[6] Plaintiff does not argue that it did not agree to arbitrate the dispute pursuant to the Policy or that its claims do not fall within the scope of the agreement to arbitrate. *See Century Indem. Co.*, 584 F.3d at 523.

contracts and insured policyholders who reside in the Virgin Islands are resolved and adjudicated in Virgin Islands courts under Virgin Islands law." (citing 22 V.I.C. § 820)); *Neon Constr. Enters., Inc. v. Int'l Bonding & Constr. Servs., Inc.*, No. ST-11-CV-13, 2012 WL 3111748, at *2 (V.I. Super. Ct. July 25, 2012) ("The Legislature has set a very clear policy dictating that forum selection clauses and choice-of-law clauses cannot be enforced when the subject matter of an insurance contract is in the Virgin Islands." (citing 22 V.I.C. § 820(a))); *B A Properties, Inc. v. Aetna Cas. & Sur. Co.*, 273 F. Supp. 2d 673, 680 (D.V.I. 2003) ("Virgin Islands' law prevented the parties from including a forum selection clause in the insurance contract specifying that the case be brought in a jurisdiction [other than] the Virgin Islands or from including a choice-of-law provision, specifying that a jurisdiction's law, other than that of the Virgin Islands, be applied." (citing 22 V.I.C. § 820)).

Magistrate Judge Cannon concluded that the arbitration clause does not conflict with 22 V.I.C. § 820 in that "[t]he arbitration clause provides the parties an opportunity to avoid the costs of litigation and encourage settlement," and "in the event that the dispute is not resolved through arbitration, this Court will retain jurisdiction over all remaining issues." (Dkt. No. 14 at 4-5).

Some courts—including the Supreme Court of the Virgin Islands—have generally found that arbitration agreements do not divest a court of jurisdiction. *See, e.g.*, *Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 188 (2009) ("[T]he presence of an arbitration agreement does not deprive the trial court of subject matter jurisdiction. Since the trial court may stay the proceeding pending arbitration, it does not lose jurisdiction of the subject matter."); *DiMercurio v. Sphere Drake Ins., PLC*, 202 F.3d 71, 76 (1st Cir. 2000) ("Agreements to arbitrate are now typically viewed as contractual arrangements for resolving disputes rather than as an appropriation of a court's jurisdiction."). On the other hand, statutes similar to 22 V.I.C. § 820 have been interpreted

22

to prohibit arbitration agreements in insurance contracts because they deprive courts of jurisdiction. *See, e.g.*, *State, Dep't of Transp. v. James River Ins. Co.*, 292 P.3d 118, 123 (Wash. 2013) (en banc); *Doucet v. Dental Health Plans Mgmt Corp.*, 412 So. 2d 1383, 1384 (La. 1982). While Plaintiff has not presented any case law from the Virgin Islands similarly interpreting 22 V.I.C. § 820, Plaintiff relies on a letter from the Government of the Virgin Islands, Office of the Lieutenant Governor, Division of Banking and Insurance disapproving a Service of Suit clause similar to the one in the instant matter. (Dkt. Nos. 16 at 13-14; 7-1). The letter states that "because this Service of Suit Clause contains language that is meant to compel arbitration, and therefore deprive the courts of this territory of jurisdiction of the action against the insurer, in violation of Section 820(a)(2), form number LMA5020 must be disapproved." (Dkt. No. 7-1 at 1).

Although the Virgin Islands Supreme Court in *Martinez* was not addressing 22 V.I.C. § 820, its conclusion that an arbitration agreement does not deprive the court of jurisdiction appears unequivocal, and thus applicable in this context as well. Accordingly, the letter from the Office of the Lieutenant Governor upon which Plaintiff relies could not override the ruling of the Supreme Court in *Martinez*. It would thus appear that Plaintiff's argument that the arbitration clause violates 22 V.I.C. § 820 by depriving the Virgin Islands courts of jurisdiction must fail.

Even assuming that, notwithstanding the *Martinez* ruling, the conclusion was reached that the arbitration clause would violate 22 V.I.C. § 820 by depriving Virgin Islands courts of jurisdiction, the Court nonetheless finds that the arbitration agreement remains enforceable. As discussed below, this is because reverse preemption does not apply to the arbitration clause so as to make Section 820 applicable.

First, there is some question as to whether the McCarran-Ferguson Act—with its reverse preemption directive—applies in the Virgin Islands. When interpreting a statute, the Court

23

"begin[s] and end[s] [its] inquiry with the text." *Travers v. Fed. Express Corp.*, 8 F.4th 198, 200 (3d Cir. 2021) (quoting *Star Athletica, L.L.C. v. Varsity Brands, Inc.*, 137 S. Ct. 1002, 1010 (2017)). In this regard, the McCarran-Ferguson Act states that "[n]o Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any *State* for the purpose of regulating the business of insurance . . . unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b) (emphasis added). The McCarran-Ferguson Act further provides that "[a]s used in this chapter, the term 'State' includes the several States, Alaska, Hawaii, Puerto Rico, Guam, and the District of Columbia." 15 U.S.C. § 1015. There is no mention of the Virgin Islands. The definition of "State" in the McCarran-Ferguson Act is clearly defined by the text of the statute, and the Court "must presume that a legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992).

Moreover, "[t]he venerable canon of statutory construction—*expressio unius est exclusio alterius*—essentially says that where a specific list is set forth, it is presumed that items not on the list have been excluded." *Lewis v. Alexander*, 685 F.3d 325, 347 (3d Cir. 2012); *see also United States v. Thornton*, 306 F.3d 1355, 1359 n.2 (3d Cir. 2002) ("*Expressio unius est exclusio alterius* is a Latin maxim that means to express one is to exclude the other." (quoting *Abdullah v. American Airlines, Inc.*, 181 F.3d 363, 372 (3d Cir. 1999)) (internal quotation marks omitted)). Such explicit inclusion of a territory and a commonwealth such as Guam and Puerto Rico, respectively, demonstrates Congress's intent to exclude from the scope of the Act other similar jurisdictions that are not explicitly identified, i.e. the Virgin Islands. *Cf. Cooperativa De Seguros Multiples De Puerto Rico v. San Juan*, 289 F. Supp. 983, 986 (D.P.R. 1968) ("Nor does it seem that there can be any doubt that by its terms the McCarran-Ferguson Act is applicable to Puerto Rico. Section 5

24

of the Act defines Puerto Rico as a 'state' for the purposes of the statute."). Indeed, as stated by

another district court:

> The [McCarran-Ferguson Act's ("MFA")] definition expressly includes two United States
> territories, Puerto Rico and Guam, while excluding the United States territory of the Virgin
> Islands. Therefore, under the principle of *expressio unius est exclusio alterius,* the
> exclusion of the Virgin Islands from the express statutory definition of the term 'state' for
> purposes of the applicability of the MFA, raises a strong inference that the MFA does not
> apply to the territory of the Virgin Islands.

*Certain Underwriters at Lloyd's, London v. Simon*, No. 1:07-CV-0899-LJM-WTL, 2007 WL

3047128, at *6 (S.D. Ind. Oct. 18, 2007).[7]

While the Third Circuit has instructed courts to carefully apply such a cannon, *see Travers*,

8 F.4th at 206 n.19 (citing *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 381 (2013) ("We have long

held that the *expressio unius* canon does not apply unless it is fair to suppose that Congress

considered the unnamed possibility and meant to say no to it.")), the Court's conclusion that there

is some question as to whether the McCarran-Ferguson Act applies in the Virgin Islands is

supported by Guam's experience. In 1956, 15 U.S.C. § 1015 was amended to include Guam as one

of the enumerated jurisdictions within the definition of the term "state" as a part of Congress's

effort to implement Guam's Organic Act. *See* Act of Aug. 1, 1956, 84 Cong. Ch. 852, § 4, 70 Stat.

908, Pub. L. 84-896. No such similar amendment was made to include the Virgin Islands in the

McCarran-Ferguson Act. Further, it is clear that Congress is quite capable of ensuring that federal

law is applicable to the Virgin Islands when it so desires. *See, e.g.*, *Gov't of United States Virgin*

---

[7] This opinion from the Southern District of Indiana is the only case of which the Court is aware
that has directly addressed whether 22 V.I.C. § 820 invalidates an arbitration clause falling under
the Convention pursuant to the McCarran-Ferguson Act. The Indiana district court relied on "the
strong preference . . . for recognition of international agreements to properly promote interests of
comity and predictability in the enforcement of such agreements" in ultimately concluding that the
Convention was not reverse preempted by 22 V.I.C. § 820. *Simon*, 2007 WL 3047128, at *7.

*Islands v. Takata Corp.*, 67 V.I. 316, 428 (V.I. Super. Ct. 2017) ("Although the Virgin Islands is a U.S. territory rather than a 'state,' the federal Motor Vehicle Safety Act includes the Virgin Islands within its definition of a 'state.'" (citing 49 U.S.C. § 30102(a)(12))).

In support of its argument that the McCarran-Ferguson Act applies to this matter, Plaintiff cites to the Gramm-Leach-Bliley Act. (Dkt. No. 15 at 2-4). The Gramm-Leach-Bliley Act ("GLBA")—passed in 1999—reaffirmed that the McCarran-Ferguson Act "remains the law of the United States," 15 U.S.C. § 6701(a), but goes on to "create[] separate preemption standards for state laws dealing with the sale, solicitation or cross-marketing of insurance," *Ass'n of Banks in Ins., Inc. v. Duryee*, 270 F.3d 397, 405 (6th Cir. 2001). *See also Ins. Comm'r of P.R. v. Doral Ins. Agency, Inc.*, Civil 05-2230CCC, 2006 U.S. Dist. LEXIS 80333, at *11 (D.P.R. Oct. 21, 2006) ("Among its many goals, the GLBA sought to facilitate affiliations between banks and insurance companies and to permit depository institutions and their affiliates to offer insurance products. Because the states have historically regulated the insurance industry, *see e.g.,* the McCarran-Ferguson Act of 1945, . . . the GLBA includes a number of provisions specifying whether and how much it preempts otherwise applicable state insurance laws." (internal citations omitted)). While limiting the power of states in those certain circumstances, 15 U.S.C. § 6701(d)(1), it preserves state regulations that meet certain criteria and that "relate to, or are issued, adopted, or enacted for the purpose of regulating the business of insurance in accordance with the [McCarran-Ferguson Act]," 15 U.S.C. § 6701(d)(3). Interestingly, the GLBA defines the term "State" to include the Virgin Islands. 15 U.S.C. § 6701(g)(5). However, in reaffirming that the McCarran-Ferguson Act is the law of the land and providing for exceptions to McCarran-Ferguson's reverse-preemption mandate, the GLBA—although seemingly contradictory to the McCarran-Ferguson Act in its

inclusion of the Virgin Islands in its definition of the term "State"—does not indicate that it expands the definition of "State" in the McCarran-Ferguson Act to include the Virgin Islands.[8]

In view of the foregoing, the Court finds that there is some question as to whether the McCarran-Ferguson Act is applicable to the Virgin Islands. If the McCarran-Ferguson Act does not apply in the Virgin Islands, the Court must enforce the arbitration agreement according to normal preemption principles applicable to the Virgin Islands, and the dictates of federal and international law. *See CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Georgia, LLC*, 8 F.4th 1007, 1017-18 (9th Cir. 2021) ("Because the Convention is not an 'Act of Congress' subject to reverse-preemption by the McCarran-Ferguson Act, the district court correctly granted defendants' motion to compel arbitration."), *cert. denied*, 142 S. Ct. 862 (2022); *see also St. Thomas-St. John Hotel & Tourism Ass'n, Inc. v. Gov't of U.S. Virgin Islands*, 218 F.3d 232, 237-38 (3d Cir. 2000) ("[Preemption] principles are made applicable to the laws of the Virgin Islands through the Revised Organic Act, which authorizes the Virgin Islands legislature to enact territorial laws that are 'not inconsistent with . . . the laws of the United States made applicable to the Virgin Islands.'" (quoting 48 U.S.C. § 1574(a))).

Second, even assuming that the McCarran-Ferguson Act applies to the Virgin Islands, the Court agrees with the Magistrate Judge that the Act does not result in reverse preemption of the Convention so as to render the arbitration clause unenforceable. Plaintiff cites several cases where courts have found that the domestic FAA was reverse preempted by various state statutes pursuant to the McCarran-Ferguson Act. (Dkt. No. 16 at 12 (citing *Am. Bankers Ins. Co. v. Inman*, 436 F.3d 490 (5th Cir. 2006); *Std. Sec. Life Ins. Co. v. West*, 267 F.3d 821 (8th Cir. 2001); *Munich Am. Reinsurance Co. v. Crawford*, 141 F.3d 585, 596 (5th Cir. 1998))). However, because the

---

[8] Plaintiff does not argue that the GLBA applies to the issues presented in this case.

arbitration agreement at issue here is one falling under *the Convention*, this case presents a different question than those cases dealing with a domestic arbitration agreement under the FAA. Because the McCarran-Ferguson Act states that "[n]o *Act of Congress* shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance," 15 U.S.C. § 1012(b) (emphasis added), the question is whether the Convention—an international treaty directing the enforcement of international arbitration agreements—is considered an Act of Congress.

Magistrate Judge Cannon concluded that Article II, Section 3 of the Convention—requiring courts to compel arbitration when there has been an agreement to arbitrate—is a self-executing treaty provision, and therefore, that provision was not an Act of Congress that is subject to reverse preemption under the McCarran-Ferguson Act. (Dkt. No. 14 at 9).

The Supreme Court in *Medellin v. Texas*, 552 U.S. 491 (2008), articulated the framework for the impact of international treaties on U.S. law:

> This Court has long recognized the distinction between treaties that automatically have effect as domestic law, and those that—while they constitute international law commitments—do not by themselves function as binding federal law. The distinction was well explained by Chief Justice Marshall's opinion in *Foster v. Neilson,* 2 Pet. 253, 315, 7 L.Ed. 415 (1829), overruled on other grounds, *United States v. Percheman,* 7 Pet. 51, 8 L.Ed. 604 (1833), which held that a treaty is "equivalent to an act of the legislature," and hence self-executing, when it "operates of itself without the aid of any legislative provision." *Foster, supra,* at 314. When, in contrast, "[treaty] stipulations are not self-executing they can only be enforced pursuant to legislation to carry them into effect." *Whitney v. Robertson,* 124 U.S. 190, 194, 8 S.Ct. 456, 31 L.Ed. 386 (1888). In sum, while treaties "may comprise international commitments . . . they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms." *Igartua–De La Rosa v. United States,* 417 F.3d 145, 150 (C.A.1 2005) (en banc) (Boudin, C. J.).

*Id.* at 504-05.

While the Third Circuit has not directly spoken on this issue, several other circuit courts have addressed the interaction between the Convention, the Convention Act, and the McCarran-

Ferguson Act. The Ninth Circuit recently analyzed a Washington statute nearly identical to 22 V.I.C. § 820 in *CLMS Mgmt. Servs. Ltd. P'ship v. Amwins Brokerage of Ga., LLC*, 8 F.4th 1007 (9th Cir. 2021), wherein it found that Article II, Section 3 of the Convention is self-executing and thus was not reverse-preempted by the state statute because it is not an "Act of Congress" subject to reverse-preemption by the McCarran-Ferguson Act.[9] The Ninth Circuit concluded that Article II, Section 3 is self-executing because, among other reasons, "[t]his provision . . . mandates that domestic courts 'shall' enforce arbitration agreements, and 'leaves no discretion to the political branches of the federal government whether to make enforceable the agreement-enforcing rule it prescribes.'" *Id.* at 1013 (quoting *Safety Nat'l Cas. Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714, 735 (5th Cir. 2009) (en banc) (Clement, J., concurring)).

The Fourth Circuit took a different approach in declining to decide whether the Convention was self-executing, but holding that *the Convention Act* itself was not reverse-preempted by state law pursuant to the McCarran-Ferguson Act: "the Convention Act, as legislation implementing a treaty, is not subject to reverse preemption, so insurance disputes are not exempt from the Convention Act pursuant to McCarran-Ferguson's reverse-preemption rule." *ESAB Group, Inc. v. Zurich Ins. PLC*, 685 F.3d 376, 390 (4th Cir. 2012). The Fourth Circuit relied on the Supreme Court's instruction that "McCarran-Ferguson was 'directed to implied preemption by domestic commerce legislation'" as opposed to "arbitration or treaties." *Id.* at 388, 390 (quoting *American Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003)).

---

[9] The Ninth Circuit noted that the Washington Supreme Court had interpreted the state statute to prohibit binding arbitration agreements in insurance contracts. *CLMS Mgmt. Servs. Ltd. P'ship*, 8 F.4th at 1010 (citing *State, Dep't of Transp. v. James River Ins. Co.*, 292 P.3d 118, 123 (Wash. 2013)).

Finally, the Fifth Circuit—sitting en banc—considered whether a Louisiana statute with similar language to 22 V.I.C. § 820 reverse preempted the Convention and Convention Act under the McCarran-Ferguson Act.[10] *Safety Nat'l Cas. Corp. v. Certain Underwriters*, 587 F.3d 714 (5th Cir. 2009). The Fifth Circuit did not decide whether the Convention was self-executing, but concluded that the Convention—whether it required implementing legislation or not—superseded state law because it was a treaty and not an Act of Congress. *Id.* at 723-24.[11]

In contrast to those Circuits that found McCarran-Ferguson's reverse preemption inapplicable in this context, the Second Circuit in *Stephens v. American Int'l Ins. Co.*, 66 F.3d 41 (2d Cir. 1995), held that the Convention was not self-executing and thus "relies upon an Act of Congress for its implementation." *Id.* at 45. The Second Circuit thus concluded that the Convention Act was preempted by state law under the McCarran-Ferguson Act. *Id.*

Based on this Court's consideration of the approaches adopted by the various circuit courts, the Court is not persuaded by the decision in *Stephens*—the oldest of the cases from the Courts of Appeals—wherein the Second Circuit did no analysis of the Convention in summarily concluding that the Convention is not self-executing. *See CLMS Mgmt. Servs. Ltd. P'ship*, 8 F.4th at 1016 ("Without the benefit of *Medellín*'s guidance, the Second Circuit concluded that the Convention is non-self-executing but it did not undertake an analysis of the Convention's text, drafting and

---

[10] The Fifth Circuit noted that "[a]lthough it is not clear from this provision's text that arbitration agreements are voided, Louisiana courts have held that such agreements are unenforceable because of this statute." *Safety Nat'l Cas. Corp. v. Certain Underwriters*, 587 F.3d 714, 719 (5th Cir. 2009).

[11] The Fifth Circuit specifically found that the Convention as opposed to the Convention Act was what superseded state law, stating that: "Because here the Convention, an implemented treaty, rather than the Convention Act, supersedes state law, the McCarran-Ferguson Act's provision that 'no Act of Congress' shall be construed to supersede state law regulating the business of insurance is inapplicable." *Safety Nat'l Cas. Corp.*, 587 F.3d at 725.

negotiation history, or the views of the executive.").[12] The Court also notes that the Third Circuit appears to disagree with the Fourth Circuit's approach that the Convention Act cannot be reverse preempted under the McCarran-Ferguson Act, as evidenced by the fact that the Third Circuit has previously evaluated whether the Convention Act is subject to reverse preemption by a New Jersey statute. *See Suter*, 223 F.3d at 160-61 ("In the instant case, there is no contention that either the Convention Act or the FAA 'specifically relate to the business of insurance.' Thus, the only issues are whether these statutes as applied in the instant case invalidate, impair or supercede a New Jersey statute that was enacted for the purpose of regulating the business of insurance.").[13] The Court thus declines to follow the approach of the Fourth Circuit.

---

[12] Additionally, *Stephens v. American Int'l Ins. Co.* is in tension with another decision by the Second Circuit, which found that the Foreign Sovereign Immunities Act ("FSIA") was not reverse preempted pursuant to the McCarran-Ferguson Act: "the international-law origins of the FSIA, so different from the kind of congressional statutory action that the McCarran-Ferguson Act was enacted to deal with, virtually compel the conclusion that the McCarran-Ferguson Act should not be interpreted to exclude insurance companies from the FSIA's requirements of sovereign immunity." *Stephens v. National Distillers & Chem. Corp.*, 69 F.3d 1226, 1231 (2d Cir. 1995), *as amended*, (Jan. 11, 1996). In *National* Distillers, the Second Circuit specifically noted the potential tension between its holding and *Stephens v. American International Inc. Co. See id.* at 1233 n.6.

[13] The Third Circuit in *Suter* addressed whether the New Jersey Liquidation Act preempted the Convention Act and the domestic FAA that allowed for the removal and arbitration of certain claims. 223 F.3d at 160-62. The Third Circuit ultimately found that there was no interference with the state law by federal law allowing for removal and arbitration of the claims. *Id.* at 162. The Court notes that the Third Circuit does not discuss whether the Convention *itself* could or could not be reverse-preempted under the McCarran-Ferguson Act. Rather, its focus is on the provisions of the Convention Act. It is clear that the only potential conflict between state and federal law regarding removal is entirely between the Convention Act and state law, because the Convention itself does not address the jurisdiction of U.S. courts. Moreover, with regard to whether arbitration could be compelled in violation of state law, the Third Circuit ultimately concluded that there was no conflict between state and federal law, and did not reach the issue of whether the McCarran-Ferguson Act applies to the provisions of the Convention itself. *Id.* at 161-62.

The Court is persuaded, however, by the approach adopted by the Ninth Circuit, that Article II, Section 3 of the Convention—as a self-executing treaty provision—does not fall within the definition of "Act of Congress" for purposes of the McCarran-Ferguson Act.

"The interpretation of a treaty, like the interpretation of a statute, begins with its text." *Medellin*, 552 U.S. at 506. Article II, Section 3 clearly states that "[t]he *court* of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, *shall*, at the request of one of the parties, refer the parties to arbitration." (emphasis added). As recognized by the Third Circuit, if a valid arbitration agreement falling under the Convention exists, district courts lack the discretion to refuse to compel arbitration unless certain limited defenses apply. *Std. Bent Glass Corp*, 333 F.3d at 449 ("Where a dispute arises from an international commercial agreement, a court must address four factors to determine whether the arbitration agreement falls under [the Convention]. If the answers are all in the affirmative, the court *must* order arbitration unless it determines the agreement is null and void." (emphasis added)); *Sandvik AB*, 220 F.3d at 104-05 ("The [Convention] commits the courts of signatory states to refer parties to arbitration when the parties have agreed to arbitrate disputes." (citing the Convention at Article II)).[14] Such a directive to courts is indicative of a self-executing

---

[14] As noted by the Third Circuit, one provision of the Convention Act, 9 U.S.C. § 206, "empowers district courts to compel arbitration in accordance with agreements . . . falling within the New York Convention." *Century Indem. Co*, 584 F.3d at 523; *see* 9 U.S.C. § 206 ("A court having jurisdiction under this chapter *may* direct that arbitration be held in accordance with the agreement . . . ." (emphasis added)). One might argue that the fact that there is a statutory provision empowering courts to compel arbitration—and thus implementing Article II, Section 3 of the Convention— suggests that the provision is not self-executing. However, the Third Circuit's clear directive regarding the mandatory nature of compelling arbitration of agreements falling under the Convention unless certain limited defenses apply does not come from 9 U.S.C. § 206. Instead, the Third Circuit's command comes from the language of the Convention itself. *See* the Convention at Article II, Section 3 ("The court of a Contracting State, when seized of an action in a matter in respect of which the parties have made an agreement within the meaning of this article, *shall*, at the request of one of the parties, refer the parties to arbitration, *unless it finds that the said*

treaty provision. *See CLMS Mgmt. Servs. Ltd. P'ship*, 8 F.4th at 1013 ("This provision is addressed directly to domestic courts, mandates that domestic courts 'shall' enforce arbitration agreements, and 'leaves no discretion to the political branches of the federal government whether to make enforceable the agreement-enforcing rule it prescribes.'" (quoting *Safety Nat'l Cas. Corp.*, 587 F.3d at 735 (Clement, J., concurring))); *Safety Nat'l Cas. Corp.*, 587 F.3d at 735 (Clement, J., concurring) ("Referral to arbitration is mandatory, not discretionary. Treaty provisions setting forth international obligations in such mandatory terms tilt strongly toward self-execution."). *Cf. Medellin*, 552 U.S. at 508 (finding Article 94 of the United Nations Charter was not self-executing because "[t]he Article is not a directive to domestic courts" and "[i]t does not provide that the United States 'shall' or 'must' comply with an [International Court of Justice] decision").

Congress has passed the Convention Act, which some courts have interpreted as meaning that the Convention is not self-executing. *See, e.g.*, *Clientron Corp. v. Devon IT, Inc.*, 35 F. Supp. 3d 665, 672 (E.D. Pa. 2014) ("It is clear that the NY Convention is not self-executing. As evidenced by the passage of Chapter 2 of the FAA, the NY Convention does not operate of itself without the aid of any legislative provision." (internal citation and quotation marks omitted)). It is true that "when treaty stipulations are 'not self-executing they can only be enforced pursuant to legislation to carry them into effect.'" *Medellin*, 552 U.S. at 526 (quoting *Whitney v. Robertson*, 124 U.S. 190, 194 (1888)). However, while Congress saw fit to pass legislation to assist in

---

*agreement is null and void, inoperative or incapable of being performed.*" (emphasis added)); *Sandvik AB*, 220 F.3d at 104-05 (the Convention "commits the courts of signatory states to refer parties to arbitration"); *Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 169 (3d Cir. 2012) ("Article II(3) of the New York Convention contains the 'null and void' defense which is available in actions to 'refer the parties to arbitration.'"); *Std. Bent Glass Corp*, 333 F.3d at 449 (holding that when an arbitration agreement falls under the Convention, "the court must order arbitration unless it determines the agreement is null and void"). Thus, the Third Circuit's position regarding the mandatory nature of enforcing international arbitration agreements recognizes the self-executing nature of Article II, Section 3.

implementing the Convention, 9 U.S.C. §§ 201-208, this does not convince the Court that Congress

was *required* to pass legislation in order for the particular directive in Article II, Section 3 to be

enforceable. *See Safety Nat'l Cas. Corp.*, 587 F.3d at 722-23 ("Implementing legislation that does

not conflict with or override a treaty does not replace or displace that treaty.").[15]

For these reasons, the Court agrees with the Magistrate Judge's decision and the Ninth

Circuit's analysis that Article II, Section 3 of the Convention is self-executing and is not subject

to reverse preemption by Virgin Islands law.[16] Thus, the arbitration clause in the contract at issue

---

[15] The Third Circuit has recognized that treaties may contain some provisions that are self-executing and some provisions that are not. *See Gross v. German Found. Indus. Initiative*, 549 F.3d 605, 613 (3d Cir. 2008) ("Without doubt, treaties and international agreements can include sections that are privately enforceable amidst sections not privately enforceable." (citing *United States v. Postal*, 589 F.2d 862, 884 n.35 (5th Cir.1979) ("A treaty need not be wholly self-executing or wholly executory.") and Restatement (Third) Foreign Relations Law of the United States § 111 cmt. h (1986) ("Some provisions of an international agreement may be self-executing and others non-self-executing."))).

[16] The Court recognizes that the Supreme Court in *Medellin* commented that:

> Congress is up to the task of implementing non-self-executing treaties, even those involving complex commercial disputes. . . . The judgments of a number of international tribunals enjoy a different status because of implementing legislation enacted by Congress. See, *e.g.*, . . . 9 U.S.C. §§ 201-208 ("The [U.N.] Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, shall be enforced in United States courts in accordance with this chapter," § 201). Such language demonstrates that Congress knows how to accord domestic effect to international obligations when it desires such a result.

552 U.S. at 521-522. Some courts have noted that this language could be read to suggest that the Supreme Court may have opined that the Convention is not self-executing. *See, e.g.*, *Safety Nat'l Cas. Corp.*, 587 F.3d at 722 ("This reference in *Medellin* could be read to imply that the Convention in its entirety is not self-executing, although such a conclusion cannot be drawn with any certainty from the brief discussion in the Court's opinion."). This Court does not agree that the passing reference to the Convention Act supports the conclusion that the Supreme Court in *Medellin* opined that all provisions of the Convention are non-self-executing. *See, e.g.*, *CLMS Mgmt. Servs. Ltd. P'ship*, 8 F.4th at 1015 ("*Medellin* does not suggest that all provisions within the Convention are non-self-executing, and it makes no mention of Article II, Section 3 at all. Indeed, relying on *Medellin*'s passing reference to the Convention Act to conclude that Article II, Section 3 is non-self-executing would contradict *Medellin*'s own clear direction that '[t]he

is not void under the McCarran-Ferguson Act and the Court must compel arbitration pursuant to an international agreement to arbitrate in line with the requirements of the Convention. *See CLMS Mgmt. Servs. Ltd. P'ship, LLC*, 8 F.4th at 1016 ("[S]tate laws prohibiting arbitration provisions in insurance contracts do not reverse-preempt the Convention's command that domestic courts are obligated to enforce international arbitration agreements unless such agreements are null and void, inoperative, or incapable of being performed."); *Green Enters., LLC v. Dual Corp. Risks Ltd.*, Civil No. 20-1243 (JAG), 2021 U.S. Dist. LEXIS 112989, at *19 (D.P.R. June 15, 2021) ("Puerto Rico Insurance Code's anti-arbitration provision is thus superseded by the Convention, which in turn makes the arbitration clause in the Policy invocable.").

### ii.   22 V.I.C. § 810

Having found that reverse preemption is inapplicable to this arbitration agreement, the Court will proceed to Plaintiff's argument that the arbitration clause is not enforceable because it was not approved by the Commissioner of Insurance as required under 22 V.I.C. § 810. (Dkt. Nos. 7 at 5; 10 at 4-6). Plaintiff relies on the disapproval of a Service of Suit provision in form number LMA5020—which is nearly identical to a portion of the Service of Suit clause in the instant contract. (Dkt. No. 7-1).

Title 22 V.I.C. § 810 provides in pertinent part that:

> (a) No insurance policy form other than surety bond forms, or application form where written application is required and is to be attached to the policy, or printed life or disability rider or endorsement form shall be issued, delivered, or used unless it has been filed with and approved by the Commissioner. This section shall not apply to policies, riders or endorsements of unique character designed for and used with relation to insurance upon a particular subject.

---

interpretation of a treaty . . . begins with its text,' not the existence of legislation enacted to implement various treaty provisions." (quoting *Medellin*, 552 U.S. at 506)).

(b) Every such filing shall be made not less than 30 days in advance of any such issuance, delivery, or use. At the expiration of such 30 days the form so filed shall be deemed approved unless prior thereto it has been affirmatively approved or disapproved by order of the Commissioner. The Commissioner may extend by not more than an additional 30 days the period within which he may so affirmatively approve or disapprove any such form, by giving notice of such extension before expiration of the initial 30-day period. At the expiration of any such period as so extended, and in the absence of such prior affirmative approval or disapproval, any such form shall be deemed approved. The Commissioner may withdraw any such approval at any time for cause. By approval of any such form for immediate use, the Commissioner may waive any unexpired portion of such initial 30-day waiting period.

In response, Defendant Underwriters submitted the affidavit of Henry L. Feuerzeig who stated that on December 28, 2005 he filed the "proposed policy form language, LMA3022, with the Commissioner of Insurance for the United States Virgin Islands in accordance with 22 V.I.C. § 810(a). . . . The wording was approved by operation of law, when it was not disapproved." (Dkt. No. 12-2 at ¶ 2 (citing 22 V.I.C. § 810(b))).

Magistrate Judge Cannon—relying on the Feuerzeig affidavit—concluded that form LMA3022 was approved by operation of law pursuant to 22 V.I.C. § 810(b). (Dkt. No. 14 at 10). The Magistrate Judge further found that, even if the Service of Suit clause was not valid due to an earlier denial of a similar Service of Suit clause contained in form LMA5020, that would not invalidate the arbitration clause. *Id.* at 10-11.

This Court need not consider the Feuerzeig affidavit, which would require converting the motion considered under the Rule 12(b)(6) standard into one for summary judgment.[17] Pursuant

---

[17] The Court notes that the Magistrate Judge took into account the affidavit and made the finding that "Defendants submitted policy form LMA3022—the same form used by the Policy, including the arbitration provision—with the Virgin Islands Insurance Commissioner on December 28, 2005." (Dkt. No. 14 at 10). Because the Court concludes that Plaintiff has not presented evidence—even if taken as true—that would place the agreement to arbitrate at issue, the Court will assess the Motion to Compel arbitration without considering the Feuerzeig affidavit and using a Rule 12(b)(6) standard. The Court notes even under the Rule 12(b)(6) standard it may properly consider the Policy containing the arbitration clause presented by Defendant Underwriters because courts

to the Convention, the Court must compel agreements to arbitrate "unless it finds that the said agreement is null and void, inoperative or incapable of being performed." *GE Energy Power Conversion France SAS, Corp.*, 140 S. Ct. at 1644 (quoting the Convention at Article II, Section 3) (internal quotation marks omitted). Because null and void is not defined by the Convention, courts should rely on domestic law "to fill the gaps" *Id.* at 1645. The Third Circuit has stated that "[a]n agreement to arbitrate is 'null and void' only (1) when it is subject to an internationally recognized defense such as duress, mistake, fraud, or waiver, or (2) when it contravenes fundamental policies of the forum state."[18] *Control Screening LLC v. Tech. Application & Prod. Co.*, 687 F.3d 163, 169-70 (3d Cir. 2012) (quoting *Rhone Mediterranee Compagnia Francese di Assicurazioni E Riassicurazoni v. Lauro*, 712 F.2d 50, 53 (3d Cir. 1983) (internal quotation marks omitted); *see also Bautista*, 396 F.3d at 1302 ("The Convention's null and void clause . . . limits the bases upon which an international arbitration agreement may be challenged to standard breach-of-contract defenses." (quoting *DiMercurio*, 202 F.3d at 79) (internal quotation marks omitted)). "[T]he 'null and void' language must be read narrowly, for the signatory nations have jointly declared a general policy of enforceability of agreements to arbitrate." *Control Screening LLC*, 687 F.3d at 170 (quoting *Rhone*, 712 F.2d at 53) (internal quotation marks omitted). Such an

---

may also consider "an undisputedly authentic document . . . if the plaintiff's claims are based on the document." *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Plaintiff has not claimed that the Policy is not the insurance policy at issue in the Complaint or disputed the authenticity of that document; therefore, the Court may properly consider it under the Rule 12(b)(6) standard. *See Doyle v. Ad Astra Recovery Servs., Inc.*, No. 1:17-cv-05233-NLH-AMD, 2018 WL 1169121, at *2 (D.N.J. March 6, 2018) ("Here, even though Plaintiff's complaint does not attach the agreement that contains the arbitration provision at issue, the Court may consider it because Plaintiff's claims derive from the agreement.").

[18] "The forum law implicitly referenced by Article II section 3 is the law of the United States, not the local law of the Virgin Islands or of a state." *Rhone*, 712 F.2d at 54.

approach is "most consistent with the overall purposes of the Convention" because "signatory nations have effectively declared a joint policy that presumes the enforceability of agreements to arbitrate [and] [n]either the parochial interests of the forum state, nor those of states having more significant relationships with the dispute, should be permitted to supersede that presumption." *Rhone*, 712 F.2d at 53-54.

The Court finds that the approval or disapproval of an agreement to arbitrate by the Virgin Islands Commissioner of Insurance is not the type of defense that would render an arbitration clause null and void pursuant to the Convention. The approval or disapproval of the arbitration agreement does not change the fact that the parties agreed to arbitrate issues related to the Policy. Thus, even if Plaintiff were correct that the arbitration clause itself was disapproved by the Commissioner of Insurance, the arbitration clause at issue would still be enforceable.[19]

The Convention mandates that when a dispute arises from an agreement falling under the Convention, the Court must order arbitration unless it determines the agreement is null and void, inoperative, or incapable of being performed. The Convention at Article II, Section 3; *see also Std. Bent Glass Corp.*, 333 F.3d at 449. Plaintiff does not otherwise dispute that it reached an agreement to arbitrate with Defendant Underwriters or that its claims regarding the alleged mishandling of its insurance policy fall within the scope of that agreement to arbitrate. *See Century Indem. Co.*, 584 F.3d at 523.[20] Nor is the agreement null and void, inoperative, or incapable of being performed

---

[19] And, as concluded above, the Virgin Islands insurance statute does not reverse preempt an agreement to arbitrate under the Convention.

[20] In the Notice of Removal, Defendant Underwriters states that Defendant Executive "consents . . . to the resolution of the claims against it in arbitration." (Dkt. No. 1 at 3). Plaintiff has not challenged the inclusion of Defendant Executive in the arbitration proceedings or Magistrate Judge Cannon's ruling that the *entire* case should be stayed pending the completion of arbitration.

within the meaning of the Convention. In these circumstances, the Court is commanded by the Convention to refer parties to arbitration. *Std. Bent Glass Corp.*, 333 F.3d at 449.[21]

## IV.   CONCLUSION

For the reasons stated herein, the Court will deny Plaintiff's Motion to Remand, affirm Magistrate Judge Cannon's Memorandum Opinion and Order granting Defendant Underwriters' Motion to Compel Arbitration as modified by the analysis and reasons stated herein, and deny as moot Defendant Underwriters' Motion to Dismiss. Accordingly, the Court will refer the matter to arbitration and stay this action pending the completion of the arbitration proceedings.

An appropriate Order accompanies this Memorandum Opinion.

Date:   June 1, 2022                                   _____/s/_____
                                                       WILMA A. LEWIS
                                                       District Judge

---

[21] In its Motion to Dismiss, Defendant Underwriters requests that the Court dismiss the Complaint for failure to meet the minimum pleading standards set out in Federal Rules of Civil Procedure 8 and 9(b). (Dkt. No. 2 at 1-2). Alternatively, Defendant Underwriters requests that the Court order Plaintiff to make a more definitive statement pursuant to Federal Rule of Civil Procedure 12(e). *Id.* at 2. Because the Court has affirmed the Magistrate Judge's Order referring the matter to arbitration, the Court will deny as moot Defendant Underwriters' Motion to Dismiss.